UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **OLIVER HOWARD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-1110** |
| **BURL CAIN, WARDEN** | **SECTION "J"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.    Factual Background**

The petitioner, Oliver Howard ("Howard"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On September 10, 1997, Howard and a co-

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

defendant, Patrick Pugh, were charged by bill of information in Jefferson Parish with armed robbery.[3]

The record reflects that, on August 7, 1997, Robert Fray, and a friend, Rick Hamilton, went to the D.C. Lounge to shoot pool.[4] As Fray was getting his pool sticks out of the car, Howard and Patrick Pugh approached him and asked if he was "DJ'ing" that night. Fray responded that he was not and he went inside the lounge to shoot pool with Hamilton.

Later, Fray and Hamilton left the lounge in separate cars. When Fray got into his car, he was again approached by Pugh, who asked for a ride to the Fischer housing project. Fray agreed to drop him nearby at a Sheraton Hotel. Pugh then asked if his cousin, Howard, could also get a ride and Fray agreed. As they approached the Sheraton, Pugh asked Fray to turn into the nearby neighborhood. Fray complied and stopped about after three blocks as directed by Pugh. Pugh got out of the car and offered to give Fray money for gasoline. Fray said no and shook hands with Pugh.

Suddenly, Pugh's demeanor changed and he stated, "Well, how about we take all you've got." Fray first though it to be a joke. He then looked back at Howard and Pugh firmly stated, "Don't look back there." Fray gave Pugh his wallet, which contained eight dollars. Pugh then said, "My boy in the back's going to take care of you with a knife." Fray then felt his head pull back and something sliced across his throat. He grabbed the knife and pushed it away. He leaned toward the center console to see into the back seat, and Howard and Pugh began hitting him. He reached into the console and got his .380 handgun. He then fired a shot at the passenger window.

---

[3]St. Rec. Vol. 1 of 6, Bill of Information, 9/10/97.

[4]The facts were taken from the unpublished opinion of the Louisiana Fifth Circuit Court of Appeal on out-of-time appeal. St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 01-KA-964, 1/29/02; *State v. Howard*, 810 So. 2d 588 (La. App. 5th Cir. 2002) (Table).

At that point, Fray rolled himself out of the driver's side door believing that Pugh might be coming around to get to him. As he rolled out, Howard continued to hang on to him. As Fray hit the ground, the car, still in gear, rolled over his right side. The car rolled away and sustained damage when it hit something. Fray and Howard fought for control of the gun. The police arrived while they were still struggling on the ground. Both men were handcuffed and separated. Fray was bleeding from cuts on his hand and neck. He also sustained cuts and bruises to his face, chest, back, and elbows. The police located a black kitchen knife at the scene. They also found Pugh around the corner with a gunshot wound to the chest and eight dollars in his left hand. After his car was repaired, Fray located another knife under the front seat, and his mother turned it over to the police.

On December 2, 1997, Pugh entered a plea of guilty to armed robbery.[5] He was sentenced to serve five years in prison without benefit of parole, probation, or suspension of sentence.[6]

Howard was tried before a jury on June 18 and 19, 1998, and was found guilty as charged.[7] On July 10, 1998, the Trial Court sentenced Howard to serve 35 years in prison without benefit of parole, probation, or suspension of sentence.[8] The Court eventually denied Howard's motions to reconsider the sentence and for bond pending appeal.[9]

---

[5]St. Rec. Vol. 1 of 6, Defendant's Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty (Pugh), 12/2/97; Plea Minutes (Pugh), 12/2/97.

[6]St. Rec. Vol. 1 of 6, Plea Minutes (Pugh), 12/2/97.

[7]St. Rec. Vol. 1 of 6, Trial Minutes, 6/18/98; Trial Minutes, 6/19/98; Jury Verdict, 6/19/98.

[8]St. Rec. Vol. 1 of 6, Sentencing Minutes, 7/10/98.

[9]St. Rec. Vol. 1 of 6, Motion to Reconsider Sentence, 7/14/98; Trial Court Order, 7/16/98; Motion for Bond Pending Appeal, 7/14/98; Trial Court Order, 7/24/98.

The Court also granted Howard's motion for leave to appeal.[10] The Court, on January 6, 1999, dismissed the appeal at a hearing held on the court reporter's motion because Howard failed to pay the requisite costs.[11]

Thereafter, on January 15, 1999, Howard entered a plea of guilty to the State's multiple bill.[12] The Trial Court re-sentenced him to serve 50 years in prison as a multiple offender, without benefit of parole, probation, or suspension of sentence.

Although Howard did not immediately move to appeal or seek reconsideration of the multiple offender sentence, his conviction did not become final. Instead, on March 7, 2001, the Trial Court granted Howard leave to file an out-of-time appeal.[13] *See Jiminez v. Quarterman*, __ U.S. __, 129 S. Ct. 681, 686-87 (2009) (where a state court grants a criminal defendant the right to file an out-of-time appeal during state collateral review, his judgment is not yet final for purposes of seeking federal habeas review).

On appeal, Howard's counsel raised two grounds for relief: (1) the evidence was not sufficient to support a conviction for armed robbery; and (2) the sentence was unconstitutionally excessive.[14] On January 29, 2002, the Louisiana Fifth Circuit Court of Appeal affirmed the conviction and sentence. The Court held that the evidence was sufficient and that Howard was

---

[10]St. Rec. Vol. 1 of 6, Motion for Appeal, 7/ 14/98; Trial Court Order, 7/27/98.

[11]St. Rec. Vol. 1 of 6, Motion to Dismiss Appeal, 9/22/98; Minute Entry, 1/6/99.

[12]St. Rec. Vol. 1 of 6, Waiver of Rights Plea of Guilty Multiple Offender, 1/15/99; Sentencing Minutes, 1/15/99.

[13]St. Rec. Vol. 1 of 6, Trial Court Order, 3/7/01; Uniform Application for Post-Conviction Relief, 12/27/00 (signed 12/20/00).

[14]St. Rec. Vol. 5 of 6, Appeal Brief, p. 4, 01-KA-0964, 9/7/01.

4

procedurally barred from challenging the sentence because it was imposed as part of a plea agreement.[15]

Howard timely filed a writ application in the Louisiana Supreme Court on March 1, 2002, seeking review of the appellate court's order.[16] The Court denied Howard's application without reasons on January 31, 2003.[17]

Thereafter, on April 17, 2003, Howard filed a petition for writ of certiorari in the United States Supreme Court.[18] The petition was denied on June 16, 2003,[19] and Howard's conviction became final that same day. *Geisberg v. Cockrell*, 288 F.3d 268, 271 (5th Cir. 2002) (for purposes of the AEDPA, a state conviction becomes final when a petition for certiorari is denied by the United States Supreme Court), *cert. denied*, 537 U.S. 1072 (2002); *Crutcher v. Cockrell*, 301 F.3d 656 (5th Cir. 2002); *State v. Hoffman*, 768 So. 2d 592, 592 (La. 2000) (conviction not final until application for writ of certiorari to U.S. Supreme Court is denied), *cert. denied*, 531 U.S. 946 (2000).

---

[15]*State v. Howard*, 810 So. 2d 588 (La. Ct. App. 2002) (Table); St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 01-KA-964, 1/29/02.

[16]St. Rec. Vol. 1 of 6, La. S. Ct. Letter, 2002-KO-627, 3/1/02 (postal meter 2/20/02); St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 02-KO-0627, 3/1/02 (postal meter 2/20/02). Pursuant to La. S.Ct. R. X§5, an application seeking review of a judgment by the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. Howard's writ application was mailed to the Louisiana Supreme Court on February 20, 2002, within the 30-day period.

[17]*State v. Howard*, 836 So. 2d 59 (La. 2003); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2002-KO-0627, 1/31/03.

[18]St. Rec. Vol. 4 of 6, U.S. S. Ct. Letter (application filed), 02-10136, 4/17/03; U.S. S. Ct. Rule 13(1) allows 90 days for filing an application for writ of certiorari with the United States Supreme Court. *See Ott v. Johnson*, 192 F.3d 510 (5th Cir. 1999).

[19]*Howard v. Louisiana*, 539 U.S. 931 (2003); St. Rec. Vol. 1 of 6, U.S. S. Ct. Letter (order issued), 02-10136, 6/16/03.

## II. Procedural History

While his petition was pending in the United States Supreme Court, on June 11, 2003, Howard filed a second writ application with the Louisiana Supreme Court seeking review of the appellate court's ruling on his out-of-time appeal.[20] The Court later denied the application on May 21, 2004, as repetitive pursuant to La. Code Crim. P. art. 930.4.[21]

In the meantime, on June 13, 2003, Howard submitted an application for post-conviction relief to the Trial Court raising 15 grounds for relief:[22] (1) the jury instruction on principals was in error; (2) there was no proof that his inculpatory statement was given freely and voluntarily; (3) the Trial Court violated his right against self-incrimination by admitting the inculpatory statement at trial; (4) counsel gave ineffective assistance for allowing the statement to be admitted at trial; (5) counsel gave ineffective assistance for ignoring the defense of insanity by intoxication; (6) trial counsel failed to object to the jury instruction on insanity by intoxication; (7) appellate counsel gave ineffective assistance for not arguing that the inculpatory statement should have been suppressed; (8)(a) counsel gave ineffective assistance for failure to object to the prosecutor's vouching for the credibility of a witness during opening and closing statements, (b) appellate counsel should have raised this on appeal; (9) prosecutorial misconduct for making prejudicial and inflammatory remarks during opening, closing, and rebuttal argument; (10) counsel gave ineffective assistance for not allowing him to testify on his own behalf; (11)(a) counsel gave ineffective assistance when he failed to object to false testimony by the State's witnesses, (b) prosecutorial misconduct for using false

---

[20]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 03-KH-1630, 6/11/03 (signed 2/18/03, mailed to Trial Court in error, 5/16/03); St. Rec. Vol. 1 of 6, La. S. Ct. Letter, 2003-KH-1630, 6/11/03 (postal meter 5/23/03).

[21]*State ex rel. Howard v. State*, 874 So. 2d 162 (La. 2004); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2003-KH-1630, 5/21/04.

[22]St. Rec. Vol. 2 of 6, Uniform Application for Post-Conviction Relief, 7/3/03 (signed 6/13/03).

testimony; (12) he was denied judicial review where portions of the transcript were not transcribed; (13)(a) sloppy police investigation led to the failure to preserve evidence, (b) counsel gave ineffective assistance for failure to object to this; (14)(a) he was denied the right to confront, cross-examine, and present a defense where hearsay evidence was admitted, (b) counsel gave ineffective assistance for failure to object to this; and (15)(a) irrelevant evidence was introduced at trial, (b) counsel gave ineffective assistance for failure to object to this.

On July 9, 2003, the Trial Court denied the application for lack of jurisdiction.[23] The Court found that it lost jurisdiction because Howard had a writ application, No. 2003-KH-1630, pending in the Louisiana Supreme Court at the time.

Howard filed a writ application with the Louisiana Fifth Circuit seeking review of that order.[24] The Court denied the application on August 13, 2003, finding no error in the ruling.[25]

On September 5, 2003, Howard submitted a writ application to the Louisiana Supreme Court challenging the Trial Court's decision to deny his application for post-conviction relief for lack of jurisdiction.[26] The Court denied the application without reasons on October 8, 2004.[27]

---

[23] St. Rec. Vol. 2 of 6, Trial Court Order, 7/9/03.

[24] The record does not contain a copy of the writ application, No. 03-KH-945, filed August 8, 2003. The Court has confirmed the filing date with the office of the clerk of the Louisiana Fifth Circuit.

[25] St. Rec. Vol. 2 of 6, 5th Cir. Order, 03-KH-945, 8/13/03.

[26] St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 03-KH-2598, 9/15/03 (postal meter 9/5/03); St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2003-KH-2598, 9/15/03 (postal meter 9/5/03).

[27] *State ex rel. Howard v. State*, 883 So. 2d 1033 (La. 2004); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2003-KH-2598, 10/8/04.

**III.    The Prior Federal Petition**

On July 1, 2004, the clerk of court filed Howard's first federal petition for habeas corpus relief, Civ. Action No. 04-1884"J"(6), in which he raised eighteen claims:[28] (1) insufficient evidence; (2) ineffective assistance of counsel for denial of the right to testify on his own behalf; (3) erroneous jury charge on principals; (4) excessive sentence; (5) inadmissable inculpatory statement; (6) prosecutorial misconduct; (7) known use of false testimony by the State; (8) denial of the right against self-incrimination; (9) ineffective assistance of counsel for failure to object to the admission of the inculpatory statement; (10) ineffective assistance of counsel for ignoring the insanity by intoxication defense; (11) ineffective assistance of counsel for failure to object to the jury charge on intoxication; (12) ineffective assistance of counsel on appeal for not challenging the admissibility of the statement; (13) ineffective assistance of counsel for failure to object to the prosecutor's vouching for witness credibility; (14) ineffective assistance of counsel for failure to object to false testimony; (15) denial of judicial review of a complete transcript; (16) sloppy police investigation and ineffective assistance of counsel for failure to object; (17) denial of the right to confront, cross-examine, and present a defense to hearsay, and ineffective assistance of counsel for failure to object; and (18) irrelevant evidence admitted at trial, and ineffective assistance of counsel for failure to object.

On July 26, 2006, the District Judge, on the recommendation of the assigned Magistrate Judge, dismissed Howard's petition without prejudice for failure to exhaust state court remedies in

---

[28]Civ. Action No. 04-1884"J"(6), Rec. Doc. No. 1.

connection with the 16 of the 19 claims which had never been raised before the Louisiana Supreme Court.[29] On November 7, 2006, the Court also denied his motion to reopen.[30]

IV.     **The Current Federal Petition**[31]

On January 16, 2007, the clerk of this Court filed Howard's petition for federal habeas corpus relief, in which he raised two grounds for relief:[32] (1) the evidence was insufficient to support the conviction for armed robbery; and (2) the sentence was excessive.

The State filed a response in opposition to Howard's petition alleging that the petition was not timely filed.[33] Alternatively, the State argued that the insufficient evidence claim is without merit and the excessive sentence claim is procedurally barred from review. Howard filed a traverse in reply to the State's opposition arguing that he is entitled to tolling for the pendency of his state court pleadings and that he is entitled to relief on the merits of his claims.[34]

---

[29] Civ. Action No. 04-1884"J"(6), Rec. Doc. Nos. 19, 20.

[30] Civ. Action No. 04-1884"J"(6), Rec. Doc. Nos. 21, 22.

[31] The current petition is not a prohibited second or successive petition which would require certification by the circuit court prior to consideration in this court. 28 U.S.C. § 2244(b)(3) (2006). Title 28 U.S.C. §§ 2244(b)(1) and (2) provide for the dismissal of any new or previously raised claim presented in a second or successive Section 2254 habeas corpus petition. However, the Fifth Circuit has consistently held that an adjudication on the merits is necessary before a subsequent petition is considered "second or successive." *See Barrientes v. Johnson*, 221 F.3d 741 (5th Cir. 2000) (when prior petition is dismissed without prejudice, subsequent filing is not successive) (citing *Slack v. McDaniel*, 529 U.S. 473 (2000) (subsequent filing not successive when prior filing was dismissed without prejudice)), *cert. dism.*, 531 U.S. 1134 (2001); *Graham v. Johnson*, 168 F.3d 762 (5th Cir. 1999) ("Under current law, however, it is clear that an application filed after a previous application was fully adjudicated on the merits is a second or successive application within the meaning of 28 U.S.C. § 2244(b), even if it contains claims never before raised." (emphasis added)), *cert. denied*, 529 U.S. 1097 (2000). However, the Fifth Circuit also has made clear that under AEDPA, "a prisoner's application is not second or successive simply because it follows an earlier federal petition." *In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998). The prior petition in Civ. Action 04-1884"J"(6) was dismissed without prejudice for failure to exhaust without consideration of the merits of the claims.

[32] Rec. Doc. No. 1.

[33] Rec. Doc. No. 9.

[34] Rec. Doc. Nos. 10.

## V. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[35] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on October 16, 2006.[36] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

The State alleges that Howard's petition is not timely filed. The Court agrees and will address this defense.

## VI. Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[37] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). As discussed above,

---

[35] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[36] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Howard's petition on January 16, 2007, when the filing fee was paid. Howard's signature on the petition is dated October 16, 2006. This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

[37] The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

Howard's conviction became final on June 16, 2003, when the United States Supreme Court denied his writ application following his out-of-time appeal.

Under the plain language of § 2244, Howard had until June 16, 2004, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Howard's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2) (2006). In order for a State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the

---

| | | |
|---|---|---|
| A. | | the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; |
| B. | | the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions; |
| C. | | the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or |
| D. | | the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. |

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

11

application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey v. Saffold*, 536 U.S. 122 (2002) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, at the time his conviction became final on June 16, 2003, Howard had a writ application filed in Louisiana Supreme Court. However, that writ application was submitted more than 30 days after the related decision by the Louisiana Fifth Circuit was issued on January 2, 2002. La. S.Ct. R. X§5 provides that an application seeking review of a judgment by the court of appeal shall be filed or postmarked within 30 days of the issuance of the appellate court's judgment. A writ

application which fails to comply with La. S. Ct. Rule X§5 is not "properly filed" because it is untimely, and it is not pending as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines. *Butler v. Cain*, 533 F.3d 314, 318-319 (2008). This writ application did not provide tolling under the AEDPA.

Nevertheless, Howard also filed an application for post-conviction relief in the state trial court on June 13, 2003, which was three days before his conviction became final. That application remained pending, for purposes of the AEDPA, until October 8, 2004, when the Louisiana Supreme Court denied the related writ application.

The one-year filing period began to run on October 9, 2004, and it continued to run for 365 days, until Saturday, October 8, 2005, or the next business day, Tuesday, October 11, 2005, when it expired.[38] Howard had no properly filed state post-conviction or other collateral review pending during that time.

The record also shows that, under the mailbox rule, Howard filed his first federal petition for habeas corpus relief just prior to this time period, on June 1, 2004. However, the law is well-settled that a federal petition is not a state post-conviction application or other collateral review for purposes of tolling under § 2244. *Duncan v. Walker*, 533 U.S. 167, 181-182 (2001); *Grooms v. Johnson*, 208 F.3d 488, 489 (5th Cir. 1999). Therefore, Howard is not entitled to statutory tolling for the time his first federal petition was pending. *Duncan*, 533 U.S. at 182; *Grooms*, 208 F.3d at 489.

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal

---

[38]Monday, October 10, 2005, was Columbus Day, a legal holiday.

habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848.

In this case, Howard has not provided, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling. Considering his prior federal petition, Howard was advised by the Court on several occasions during his pursuit of that petition that he had not exhausted state court remedies.[39] Even after the Court gave Howard additional time to pursue exhaustion, he squandered the time and failed to pursue any further state court review of his unexhausted claims.[40] Furthermore, to the extent Howard urges otherwise, the United States Fifth Circuit Court of Appeals has long held that mistake of law or ignorance of the statutes of limitation is not sufficient to warrant equitable tolling. *Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000). The record does not show that Howard was misled in any way or that he diligently pursued his rights in order for equitable tolling to apply in this case.

Howard's federal petition is deemed filed on October 16, 2006, which is over one year after the AEDPA filing period expired on October 11, 2005. His federal petition must be dismissed as untimely filed.

---

[39]Civ. Action 04-1884"J"(6), Rec. Doc. Nos. 5, 7, 13, 17, 19, 20.

[40]Civ. Action 04-1884"J"(6), Rec. Doc. Nos. 19, 20, 21.

## VII. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Oliver Howard's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[41]

New Orleans, Louisiana, this 7th day of January, 2010.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[41]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.